Filed 7/7/16  M&F Fishing v. Sea-Pac Ins. Managers CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| M&F FISHING, INC. et al., | D067804 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. GIC826796) |
| SEA-PAC INSURANCE MANAGERS, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald L. Styn, Judge.  Affirmed.

Webb & Carey and Patrick D. Webb for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, Matthew W. Holder, Travis J. Anderson and Karin Dougan Vogel for Defendants and Respondents.

This case is before this court for a third time.  In 2012, we reversed a $3.5 million restitution judgment in *M&F Fishing, Inc. v. Sea-Pac Insurance Managers, Inc.* (2012)

202 Cal.App.4th 1509 (*M&F Fishing*) and *unambiguously* limited the right of plaintiffs M&F Fishing, Inc. (M&F) and C&F Fishing, Inc. (C&F) (together plaintiffs) to obtain restitution, if any, from defendants Sea-Pac Insurance Managers, Inc. dba Sea-Pac Insurance Services, Raleigh, Schwartz & Powell, Inc., Brown & Brown of Washington, Inc. (B&B Washington), a subsidiary wholly owned by Brown & Brown, Inc. (B&B) and Sharon Edmondson (Edmondson) (together defendants) in connection with the placement of marine insurance by defendants.

Rather than retry their claim under California's Unfair Competition Law (Bus. & Prof. Code, § 17299 et seq.), plaintiffs on remand instead unsuccessfully attempted to avoid the law of the case. For example, plaintiffs took the position that our reversal in *M&F Fishing* allegedly was unqualified, giving them the right to start anew. Thus, plaintiffs twice sought to amend their complaint following remand, including with a proposed *100-page* first amended complaint (FAC) in which they asserted no less than 11 causes of action against defendants. When the court properly denied plaintiffs leave to amend on both occasions, plaintiffs next voluntarily dismissed their UCL claim without prejudice and then argued they could retry the case on their "damage" claims, despite the lack of any such active claims in their complaint. After more than 12 years of litigation, it is time for this case to end.

As we discuss, we independently conclude plaintiffs' complaint had no remaining viable causes of action once they voluntarily dismissed their UCL claim. As such, we affirm the judgment in favor of defendants.

2

FACTUAL AND PROCEDURAL OVERVIEW[1]

In their complaint, plaintiffs asserted a UCL claim on their own behalf and on behalf of all others similarly situated based on defendants' alleged violations of various provisions of the Insurance Code. Plaintiffs also asserted causes of action for negligence per se[2] and declaratory relief.

In particular, plaintiffs alleged that defendants violated various Insurance Code provisions because they sold plaintiffs commercial marine insurance by a nonadmitted insurer without the required special lines' surplus lines broker license. As we previously explained in *M&F Fishing*, an insurer seeking to transact insurance business in California generally must be "admitted" for that purpose (Ins. Code, § 24). (*M&F Fishing*, *supra*, 202 Cal.App.4th at p. 1514.) To become admitted, an insurer must obtain a "certificate of authority" from the Insurance Commissioner (Ins. Code, § 700, subd. (a)). (*M&F Fishing*, at p. 1514.)

As we noted in *M&F Fishing*, most marine insurance was placed by "nonadmitted" insurers. (*M&F Fishing*, *supra*, 202 Cal.App.4th at p. 1515.) Because nonadmitted insurers do not have a license to transact insurance business in California (Ins. Code, § 1776), placements by nonadmitted carriers are effected by a class of

---

[1]     Portions of this factual and procedural summary are derived from our previous opinion in this case.

[2]     Defendants contend negligence per se is not a separate cause of action but rather is an evidentiary doctrine that creates a presumption of negligence based on a statutory violation. (See, e.g., Evid. Code, § 669, subd. (a).) We agree.

specially licensed insurance brokers who are regulated by California's surplus line law (Ins. Code, § 1761, subd. (a)).  (*M&F Fishing*, at p. 1515.)

Edmondson placed marine insurance for plaintiffs from 1996 to 2003.  Because that insurance included nonadmitted carriers, Edmondson also was required to have a special lines' surplus lines license (Ins. Code, § 1760.5).  However, neither Edmondson nor the brokerage firms where she worked possessed such a license during most times relevant in this case.

For years during the relevant time period, Edmondson without incident placed marine insurance for plaintiffs with both admitted and nonadmitted carriers.  However, when one of the nonadmitted insurers became insolvent and stopped paying claims, plaintiffs were sued by two seamen who had been injured in separate incidents while working on plaintiffs' fishing boats.  In response, each plaintiff filed a separate but related lawsuit against defendants seeking damages (as opposed to restitution, which plaintiffs sought in their UCL claim).  (See *M&F Fishing, Inc. v. Sea-Pac. Ins. Managers, Inc.* (Super. Ct. San Diego County, No. GIC 826767); see also *C&F Fishing Ltd. v. Sea-Pac Ins. Managers, Inc.* (Super. Ct. San Diego County, No. GIC 826768).)  Ultimately, both cases were settled for more than $6 million by the errors and omissions carrier for B&B Washington, with a carve out in the releases for the "claims, causes of action and damages alleged [in the instant case]."

The record shows plaintiffs in 2007 voluntarily dismissed their second cause of action for negligence, after defendants moved for summary adjudication based on the releases in case Nos. GIC 826767 and GIC 826768.

In 2008, plaintiffs moved to amend their complaint to add 84 new plaintiffs and 82 "nominal [d]efendants," and to assert new claims based on defendants' alleged "fraud" in connection with the settlement of case No. GIC 826767. The court denied plaintiffs' motion, ruling the trial date was then "rapidly approaching" and it was not procedurally appropriate for plaintiffs to assert new claims in this case based on fraud in connection with the settlement of *another* case.

At about the same time the court denied their motion for leave to amend their complaint in the instant case, plaintiff M&F filed a motion to set aside the dismissal in case No. GIC 826767. Plaintiffs argued the dismissal was invalid because defendants fraudulently induced them to settle. However, M&F withdrew its motion before the hearing.

A few months later, M&F filed a "new action" against defendants and others that included a fraud-based claim in connection with their dismissal of case No. GIC 826767. (*M&F Fishing, Inc. v. Sea-Pac Insurance Managers, Inc.* (Super. Ct. San Diego County, case No. 37-2008-00098694).) In October 2010, defendants filed an anti-SLAPP motion to plaintiff's *fifth amended* complaint in the "new" action. Defendants alleged Code of Civil Procedure section 425.16, the anti-SLAPP statute, applied because the wrongful conduct that gave rise to the operative complaint involved allegedly false verifications

5

submitted in response to a request for documents in a civil action (i.e., petitioning activity).

Rather than oppose the defendants' anti-SLAPP motion, M&F voluntarily dismissed its fifth amended complaint. The record shows M&F then subsequently moved to set aside that dismissal under Code of Civil Procedure section 473 "based upon the *client's* mistaken attempt to reinstate the claims of the Second Amended Complaint" in the "new" action (i.e., case No. 37-2008-00098694). (Italics added.)

In denying plaintiffs' motion to set aside the dismissal in that case, the court found the " 'misconception' that dismissing the operative amended complaint would 'revive/'reinstate' a superseded, previously-filed amended complaint was not reasonable." The court therefore entered judgment in favor of defendants and awarded them attorney fees. Plaintiffs appealed that judgment to this court but subsequently dismissed the appeal before briefing commenced.

All of which brings us to *M&F Fishing*. In 2009, plaintiffs tried their UCL claim in an 11-day bench trial. As noted, the court awarded plaintiffs $3.5 million in restitution.

On appeal, we held that plaintiffs were not entitled to restitution of premiums or commissions paid for *admitted* coverage lawfully placed by defendants; that plaintiffs also were not entitled to restitution of premiums for *nonadmitted* coverage; that the court erred in *not* granting B&B's motion for nonsuit; and that, in connection with the cross-appeal, the court properly exercised its discretion when it denied the motion(s) of

6

plaintiffs seeking leave to amend their operative complaint shortly before trial. (*M&F Fishing*, *supra*, 202 Cal.App.4th at pp. 1513-1514.)

Particularly relevant to the issues in the instant appeal, we further held that on remand, plaintiffs *may* be entitled to a return of commissions/broker fees defendants received when placing marine insurance with *nonadmitted* carriers. We reiterated that plaintiffs *may* be entitled to restitution of such commissions/broker fees "because on remand the trial court must decide the threshold issue of whether [plaintiffs] released their claim to recover such commission/fees in the instant action in settlement of [their] related action[s]" in case Nos. GIC 826767 and GIC 826768. (*M&F Fishing*, *supra*, 202 Cal.App.4th at p. 1513.)

Depending on the outcome of that issue, we noted plaintiffs' entitlement to restitution of commissions/brokers fees they paid to defendants for placement of coverage with a nonadmitted carrier was further limited by the four-year limitations period set forth in section Business and Professions Code section 17208. As such, we held that plaintiffs were barred from recovering restitution of any such fees that were paid *before* March 10, 2000. (*M&F Fishing*, *supra*, 202 Cal.App.4th at p. 1513.)

On remand and in accordance with the specific and unambiguous instructions in our *M&F Fishing* opinion, the court in mid-November 2012 entered judgment in favor of B&B and awarded it costs of about $123,000. Plaintiffs did not appeal the judgment. Instead, in mid-April 2013, plaintiffs filed yet another motion under Civil Procedure Code section 473 to "modify" that judgment.

In that motion, plaintiffs asked the court to strike a portion of the following paragraph:

" 'Whereas the Court of Appeal finally dismissed defendant Brown & Brown, Inc. from this action with prejudice (see 202 Cal.App.4th at pp. 1532-33' ";
*and to replace it as follows*:

" 'THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that a separate judgment for appellate costs shall be entered in favor of defendant Brown & Brown, Inc., in the amount of $122,828.77.' "

In support of this motion, plaintiffs argued that "nowhere in the Court of Appeal's opinion [in *M&F Fishing*] did the Court dismiss defendant Brown & Brown Inc. from the action with prejudice, *nor is there any direction by the Court of Appeal to the trial court to dismiss defendant Brown & Brown Inc. upon remand to the jurisdiction of the Superior Court*." (Italics added.)  Plaintiffs instead argued our decision was an "unqualified reversal and remand, without directions," and that, as such, the effect of our decision in *M&F Fishing* was to " 'vacate the judgment, and to leave the case "at large" for further proceedings as if it had never been tried, and as if no judgment had ever been rendered.' "

In denying plaintiffs' motion to amend the judgment in favor of B&B, the court in its May 15, 2013 order correctly noted that we explicitly found that B&B's motion for nonsuit should have been granted.  As such, the court properly concluded that B&B should be dismissed from the lawsuit and judgment entered in its favor, as we contemplated.

8

Plaintiffs' appealed the order denying their motion to modify the judgment for B&B. After plaintiffs filed their opening brief, B&B moved to dismiss the appeal on the basis the order was not appealable. We granted B&B's motion to dismiss on June 12, 2014 -- when this case was before us a second time. In so doing, we specifically noted that our opinion in *M&F Fishing* was *not* an unqualified reversal, and, thus, the November 2012 judgment in favor of B&B "was not void or in excess of the superior court's authority on remand."

Despite our clear and unambiguous instructions in *M&F Fishing* regarding the issues to be decided on remand, plaintiffs in mid-November 2012 filed a motion seeking leave to amend. In support of that motion, plaintiffs attached their proposed 100-page FAC. In the proposed FAC, plaintiffs alleged 11 different causes of action including for breach of contract, breach of fiduciary duty, fraud and misrepresentation, and negligence. Plaintiffs also sought to add 38 new plaintiffs. and two new defendants.

In denying their motion, the court noted plaintiffs, "and the proposed new plaintiffs, have had opportunities to pursue, and have pursued, the claims they now seek to add in other lawsuits. Plaintiffs (and the proposed new plaintiffs) settled, dismissed or otherwise did not prevail in the other lawsuits. Accordingly, [p]laintiffs (and the proposed new plaintiffs) have not been denied their rights to pursue meritorious claims. Plaintiffs fail to establish any inequitable result from the denial of leave to amend sufficient to outweigh the extreme prejudice to [d]efendants should leave to amend be allowed."

9

Undeterred, plaintiffs in early 2013 again moved to amend their complaint. This time, plaintiffs sought to "re-plead their original alternative claim[] for legal damages arising from the [d]efendants' *per se negligence*, which [was] never dismissed with prejudice, and which [was] explicitly excluded from the prior partial settlements in GIC 826767 and GIC 826768." Plaintiffs also confusingly sought leave to "amend to conform to the proof of the supplemental claims for fraud and/or negligent misrepresentation arising from the [d]efendants' subsequent fraudulent conduct in this action and continuing conspiracy to hide the breaches of their contractual, fiduciary and statutory duties to [p]laintiffs after the original complaint was filed."

In moving to amend, plaintiffs noted the "only thing" defendants "achieved on appeal [in *M&F Fishing*] was a retrial. They remain subject to the Plaintiffs' claims for legal damages and equitable restitution arising from illegally, unfairly, fraudulently and *per se* negligently placing [p]laintiffs' coverage in violation" of *25* specifically enumerated provisions of the Insurance Code and the UCL.

The court in its May 10, 2013 order again denied plaintiffs' leave to amend. In so ruling, the court noted plaintiffs had dismissed their negligence cause of action in 2007, or *six years* earlier, and did so for strategic reasons after defendants moved for summary adjudication on that cause of action. The court also noted that plaintiffs "originally sought leave to amend to include these causes of action in July 2008. The court denied leave to amend. Plaintiffs thereafter pled these causes of action in a new complaint, Case No. 37-2008-00098694-CU-Fr-CTL. Plaintiffs dismissed this complaint in response to

10

[d]efendants' . . . special motion to strike [under Code of Civil Procedure section 425.16]. As with [p]laintiffs' dismissal of their negligence per se cause of action in response to [d]efendants' motion for summary adjudication, [p]laintiffs' dismissal of this complaint was a 'conscious strategic decision' " and thus warranted denial of their motion.

In mid-April 2013, after judgment had been entered in favor of B&B, plaintiffs moved to compel defendants -- including B&B -- to provide additional responses to written discovery that were relevant to issues having little to do with plaintiffs' remaining UCL claim. The court in response sought supplemental briefing regarding the scope of remaining issues following our *M&F Fishing* opinion.

The court in its July 12, 2013 six-page order reviewed in detail our *M&F Fishing* opinion and correctly concluded only the following issues remained on remand: "1) whether [p]laintiffs are entitled to a return of the commissions/broker fees charged for the placement of insurance with nonadmitted carriers (paid after March 10, 2000) that did not comply with the disclosure requirements of Insurance Code § 1764.1[;] 2) whether [p]laintiffs released their claim to a return of these commissions/broker fees[;] and 3) if [p]laintiffs are entitled to a return of these commission/broker fees, whether [p]laintiffs are entitled to an award of prejudgment interest on such commissions/broker fees."

After noting the limited issues remaining on remand, the court found the written discovery sought by plaintiffs went "well beyond these three issues. As such, allowing the discovery [p]laintiffs seek would not be consistent with the Court of Appeal opinion. . . . Plaintiffs specifically reference numerous alleged violations of the

11

Insurance Code. To the extent any of these alleged violations are not addressed in the Court of Appeal opinion, litigation of such alleged violations is outside of these three issues.

"Plaintiffs themselves recognize the limiting effect of the Court of Appeal opinion in their Petition for Rehearing to the Court of Appeal. Plaintiffs state:

"Remanding to determine what small portion of the commissions will be kicked back after the [defendants] were caught illegally selling such coverage, while nearly all of the $3.5 million illegally acquired is wrongfully retained by the underwriter principals in the illegal scheme, is contrary to both the letter and the public policy of the . . . 'UCL.' "

Finally, the court in its July 12 order reiterated that B&B previously had been dismissed from the lawsuit. As such, the court found plaintiffs were required to use a subpoena if they wanted discovery from B&B.

The record shows the court in a December 6, 2013 order subsequently reiterated that there were only three issues remaining in the instant case, as set forth in its July 12 order. Because plaintiffs proffered sufficient evidence to show a triable issue of fact regarding whether plaintiffs paid broker fees after March 10, 2000 and whether plaintiffs had previously released those claims in connection with each party's related lawsuit, the court in its December 6 order denied defendants' summary judgment.

In May 2014, defendants filed a three-page motion regarding the "Proper Scope of Trial and Evidence." Defendants argued such a motion was needed because following

12

*M&F Fishing*, plaintiffs repeatedly "sought to relitigate all of the issues decided against them on appeal," which we note is borne out by this record.

In order to provide "clarity and guidance" in preparing for trial, defendants sought an order as follows confirming the issues to be retried:

"(1) Plaintiffs' sole remaining claim is for [d]efendants' alleged violation of [the UCL], and this claim is based solely on [d]efendants' alleged violation of Insurance Code section 1764.1.

"(2) Because [this court] already found that standing under the UCL exists for this one remaining alleged statutory violation (Insurance Code section 1764.1), [p]laintiffs have no further need or right to litigate whether they suffered harm as a result of anything [else] allegedly done by [d]efendants. . . .

"(3) Plaintiffs' potential remedy is limited to restitution of the broker's fees and/or commissions related to insurance placed by [d]efendants with non-admitted insurers on or after March 10, 2000, based on [d]efendants' alleged violation of Insurance Code section 1764.1.  Plaintiffs are not permitted to pursue (a) recovery of damages, (b) restitution of insurance premiums, (c) restitution of any monies paid by [p]laintiffs and/or received by [d]efendants in connection with insurance placed with *admitted* insurers, and/or (d) restitution of any monies paid by [p]laintiffs and/or received by [d]efendants *before* March 10, 2000.

"(4) The [c]ourt may consider whether or not [p]laintiffs released their claim for broker's fees and/or commissions under Insurance Code section 1764.1 when they settled

13

Case No. GIC 826767 (involving M&F) and Case No. GIC 826768 (involving C&F). However, the [c]ourt will not consider, and [p]laintiffs are not permitted to pursue, the claim that the releases in these settlements should be rescinded or otherwise disregarded because [d]efendants allegedly wrongfully induced [p]laintiffs to settle the above cases.

"(5) To the extent permitted by [this court], the [c]ourt may consider whether [p]laintiffs are entitled to any prejudgment interest on any monies awarded by the [c]ourt."

Plaintiffs filed a 15-page opposition in response. Briefly, plaintiffs argued in their lengthy opposition that the court at no time had ruled plaintiffs "may not prove any unlawful, unfair and/or fraudulent business practice by [d]efendants that caused [p]laintiffs loss in fact." Plaintiffs also confusingly argued that, because this court found there was insufficient evidence to support the $3.5 million restitution award, this court in *M&F Fishing* allegedly did not "decide that the [p]laintiffs could not put on new and old evidence to meet its burden of proof on their standing to make any claim stated in the [c]omplaint."

As such, plaintiffs contended in their opposition that they were "entitled to present admissible evidence as to *any* unlawful, unfair and/or fraudulent business practice of [d]efendants that has caused them loss in fact, pursuant to the [UCL]" (italics added); that they were not limited to Insurance Code section 1764.1 in proving that claim; and that on retrial, this court allegedly "did not limit [p]laintiffs' potential remedy to restitution of

14

broker's fees and/or commissions for insurance placed in violation [of Insurance Code section 1764.1] since March 10, 2000."

The court in its August 15, 2014 order again reiterated the limited issues that would be retried, as summarized *ante*, and once again rejected plaintiffs' attempts to broaden this case including whether defendants' conduct violated provisions of the Insurance Code *other than* section 1764.1 and/or whether defendants allegedly engaged in fraudulent conduct in connection with the settlement of case No. GIC 826767.

On December 23, 2014, less than two months before retrial was to commence, plaintiffs dismissed their UCL claim without prejudice. In connection with that request, plaintiffs confusingly attached "Exhibit A," which summarized line-by-line what they were deleting from their operative complaint. Plaintiffs also attached a copy of that complaint, which was modified by "striking" or "blacking out" various words, phrases and/or references as summarized in Exhibit A.

Thus, for example, the record shows in the caption of their complaint, plaintiffs eliminated reference to section 17200 of the UCL. Plaintiffs alleged in Exhibit A that while they were dismissing "all counts and all claims for equitable relief [under the UCL]," they were not dismissing the "remaining counts and claims for legal damages, as stated in the remaining First and Third Causes of Action" Confusingly, the first cause of action was for violation of the UCL, which plaintiffs dismissed, and the third cause of action was for declaratory and injunctive relief, which clearly involved only equitable remedies (if any).

15

Not surprisingly, the parties disagreed on the effect of plaintiffs' dismissal of their UCL claim. In supplemental briefing ordered by the court, plaintiffs on the one hand argued their dismissal meant they no longer could pursue their "equitable remedies" under the UCL. However, they further argued that they had "preserve[d] [their] Constitutional right to a jury trial of the remaining alternat[e] legal remedies for damages"; that this court "had affirmed the factual finding [in *M&F Fishing*], that [p]laintiffs 'suffered harm caused by [d]efendants' violation of [the] Insurance Code' "; and that what remains to be decided "by a jury on retrial is the total amount of damages . . . caused by [d]efendants' breaches of contract, money had and received, tortious violation of the Insurance Code and fraud." According to plaintiffs, these claims were not new and have "been continuously plead in the complaint from its inception."

Defendants, on the other hand, argued that plaintiffs' dismissal of the UCL claim meant the case was over and judgment should be entered accordingly. Defendants also argued that plaintiffs were not entitled to try any claims for damages, and that plaintiffs' continued insistence on their right to do so was "frivolous."[3]

In it January 15, 2015 order, the court found the *only* cause of action in which plaintiffs had sought damages was in their second cause of action for negligence that

---

3      Although defendants argued plaintiffs' conduct was frivolous, they did not move for sanctions in the trial court *or* in this court. Of course, as a court of review we have the authority to impose sanctions on our own motion. (See Cal. Rules of Court, rule 8.276.) We note many of plaintiffs' arguments on appeal are borderline frivolous, including by way of example their argument that dismissal of their UCL claim did not impact their ability to try their remaining damages claims, despite the fact no such claims remained in their complaint.

16

plaintiffs had dismissed in 2007. The court also found that plaintiffs had sought restitution of premiums and/or commissions in connection with their UCL claim and that plaintiffs were not, in any event, entitled to damages on that claim.

With respect to plaintiffs' remaining cause of action for declaratory and injunctive relief, the court found it was limited to a declaration of defendants' responsibility, if any, for "alleged violations of the Insurance Code" and thus, was "entirely derivative" of p UCL claim. Because plaintiffs dismissed their UCL claim, the court found there was no basis for an award of declaratory or injunctive relief. The court separately found plaintiffs were not entitled to declaratory relief because they sought a declaration regarding defendants' past conduct and declaratory relief "does not lie to redress past wrongs." The court thus dismissed the action and entered judgment for defendants.

## DISCUSSION

We independently conclude that once plaintiffs voluntary dismissed their UCL claim, there was no viable cause of action remaining in their operative complaint, including any cause of action for damages as plaintiffs argue on appeal.

First, despite plaintiffs' efforts and imagination, the court correctly and repeatedly limited the issues to be retried following our opinion in *M&F Fishing*. (See *Puritan Leasing Co. v. Superior Court* (1977) 76 Cal.App.3d 140, 147 [noting that when, such as here, a court orders a matter reversed and remanded " 'for proceedings consistent with this opinion,' " the remand order must be read with the appellate decision as a whole and noting that when this phrase is a " 'summary method of incorporating by reference

17

directions, as to proceedings on retrial,' " then the order is not a general reversal and "the trial court is limited to following the directions precisely on remand"].)

Second, as the detailed summary *ante* shows, plaintiffs in 2007 dismissed the *only* cause of action (i.e., negligence) in which they sought recovery of damages, as opposed to equitable relief.  Thus, contrary to plaintiffs' argument here, there were no remaining damages claims to be tried in 2009 *or* retried following our opinion in *M&F Fishing*.

Third, plaintiffs were not entitled to recover damages in their UCL claim (see *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 312 [noting a UCL action " 'is equitable in nature' " and, thus, " 'damages cannot be recovered' "]) or in their third cause of action for declaratory and injunctive relief.

Fourth, assuming plaintiffs had not abandoned their declaratory relief cause of action, we independently conclude this cause of action was derivative of plaintiffs' dismissed UCL claim.  In addition, we separately conclude the declaratory relief cause of action was limited to equitable relief, if at all, and is no longer at issue inasmuch as we already "declared" in *M&F Fishing* that defendants *may* be liable under the UCL for violating Insurance Code section 1764.1, subdivision (a)(2), which was one of the Insurance Code provisions listed by plaintiffs in connection with that cause of action.

Fifth, when plaintiffs in about 2005/2006 settled for over $6 million in case Nos. GIC 826767 and 826768, they released all claims *except* for the "claims, causes of action and damages alleged" in the instant case.  As such, and in light of plaintiffs' dismissal of their negligence cause of action in 2007 and the court's denial of leave to amend in 2008,

18

plaintiffs were limited to equitable relief both when they went to trial in 2009 *and* on remand, following our decision in *M&F Fishing*. For this separate reason, plaintiffs were not entitled to a retrial of any alleged damage claims, as they argue on appeal, including for breach of contract and breach of fiduciary duty.

## DISPOSITION

The judgment for defendants is affirmed. Defendants to recover their costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

McDONALD, J.

O'ROURKE, J.

19